968 A.2d 1217 (2009)
406 N.J. Super. 629
In the Matter of the REALLOCATION OF PBI REGIONAL MEDICAL CENTER'S SFY 2007 CHARITY CARE SUBSIDY.
In the Matter of the Reallocation of PBI Regional Medical Center's SFY 2008 Charity Care Subsidy.
Nos. A-0245-07T2, A-1793-07T2.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 2009.
Decided April 24, 2009.
Brian M. Foley, Morristown, argued the cause for appellant Hackensack University Medical Center (Schenck, Price, Smith & *1218 King, attorneys; Mr. Foley, of counsel and on the briefs.).
Rachana R. Munshi, Deputy Attorney General, argued the cause for respondent Department of Health and Senior Services (Anne Milgram, Attorney General, attorney; Melissa H. Raksa, Deputy Attorney General, of counsel; Ms. Munshi, on the brief).
Steven R. Roosa, Princeton, argued the cause for intervenor-respondent St. Mary's Hospital (Reed Smith, attorneys; Mr. Roosa, of counsel and on the briefs).
Before Judges LISA, REISNER and ALVAREZ.
The opinion of the court was delivered by
ALVAREZ, J.A.D.
Hackensack University Medical Center (Hackensack Medical) appeals from two final administrative actions by the Commissioner of New Jersey's Department of Health and Senior Services (Department of Health), reallocating certain charity care subsidies to intervenor St. Mary's Hospital (St. Mary's). The reallocation of funds was necessitated by the closure of the facility for which they were originally designated, the Passaic Beth Israel Regional Medical Center (Beth Israel). Hackensack Medical challenges the Department's decision for a portion of the state fiscal year (fiscal year) 2007 and the entire fiscal year 2008. We consolidated the appeals and affirm.

Charity Care Subsidy Program
The Department of Health is responsible for the implementation of State policies regarding hospital and related health care services. N.J.S.A. 26:2H-1. This includes the charity care subsidy program designed to give financial aid, on a yearly basis, to hospitals that provide disproportionate services to indigent patients. See N.J.S.A. 26:2H-18.59i. The charity care subsidy consists of state and federal Medicaid funds. N.J.S.A. 26:2H-18.58(a).
When a hospital receiving a charity care subsidy closes, the unpaid installments allocated to that facility for the remaining fiscal years are frozen. N.J.A.C. 10:52-13.7(a). The unpaid funds are then reallocated to "hospitals that are serving or are expected to serve the patients who would have gone to the closed hospital." Ibid. The methodology for reallocation is found in N.J.A.C. 10:52-13.7.
The standard formula for reallocation, contained in N.J.A.C. 10:52-13.7(b), (c), and (d), requires the Department of Health to perform a zip code analysis to calculate the number of patients that nearby hospitals still in operation have historically drawn from the geographic area formerly served by the closed hospital. A hospital must meet three requirements to be eligible to receive a portion of the closed hospital's allocation. N.J.A.C. 10:52-13.7(b)(1), (2), and (3).
First, the hospital must have received a charity care subsidy allocation during the fiscal year in which the closed hospital ceased operations. N.J.A.C. 10:52-13.7(b)(1). Second, the hospital must draw its patients from the same zip code areas served by the closed hospital. N.J.A.C. 10:52-13.7(b)(2). The Department of Health determines the market area served by the closed hospital based on the most recent complete calendar year data that it maintains. Ibid. Third, the hospital must demonstrate that it has a market share of twenty-five percent or more of admissions from the market area served by the closed hospital. N.J.A.C. 10:52-13.7(b)(3). The funds are reallocated among eligible hospitals based on each eligible hospital's share of the admissions. N.J.A.C. 10:52-13.7(c) and (d).
This dispute centers upon the Department of Health's election to use the alternative *1219 formula for reallocation, contained in N.J.A.C. 10:52-13.7(f), in distributing Beth Israel's remaining funds for fiscal year 2007 and its entire allocation for fiscal year 2008. That alternative method, which requires the agreement of the Department of Health and the Commissioner of Human Services when implemented, takes into consideration the following factors:
1. Maintenance of continued timely access to hospital-based services for persons eligible to participate in the New Jersey Hospital Care Payment Assistance Program and/or persons receiving services in the Hospital Relief Subsidy Fund categories; or
2. Continued operation in the same or adjoining municipality as the closed hospital of an acute care hospital, eligible to receive Disproportionate Share payments, belonging to the same system as the closed hospital and serving substantially the same eligible population.
[N.J.A.C. 10:52-13.7(f)(1) and (2).]
On January 12, 2009, after oral argument, we issued an order for limited remand so that the Department of Health could document the agreement of the Commissioner of Human Services with the alternative distribution, as required by N.J.A.C. 10:52-13.7(f). Accordingly, the Department of Health supplemented the record by providing a certification from John Guhl, Director of the Division of Medical Assistance and Health Services (DMAHS), a division within the Department of Human Services.[1] Guhl's certification states that DMAHS agreed with the reallocation of Beth Israel's fiscal year 2007 and 2008 charity care subsidies to St. Mary's in order to "maintain vital hospital services within Passaic."
The Commissioner of the Department of Health made additional findings based on the certification; namely, that DMAHS agreed with the reallocations for 2007 and 2008 made to St. Mary's, as required by N.J.A.C. 10:52-13.7(f). In our view, that determination is sufficient to satisfy the Administrative Code language to the effect that the Commissioner of the Department of Health and the Commissioner of Human Services must agree when the alternative distribution method is to be employed. See N.J.A.C. 10:52-13.7(f). In the future, the Department of Health should provide documentation of the agreement by the Commissioner of Human Services, as called for by the Administrative Code, contemporaneously with the Department's decision.

Beth Israel's Charity Care Subsidy Allocation for Fiscal Years 2007 and 2008
The Department of Health allocated a charity care subsidy of $3,443,697 for fiscal year 2007 to Beth Israel. Beth Israel closed as an acute care general hospital on February 28, 2007, as a result of bankruptcy. Beth Israel was entitled to receive $2,295,798 prior to closure, leaving $1,147,899 to be reallocated to other eligible facilities for fiscal year 2007. On February 1, 2007, the State Health Planning Board approved the transfer of ownership of Beth Israel to St. Mary's. St. Mary's subsequently moved into Beth Israel's existing buildings.
In July 2007, the Department of Health announced its fiscal year 2008 charity care *1220 subsidy allocations, which were based on calendar year 2005 data. The allocation included payment of $2,970,258 to Beth Israel despite the hospital's closure a few months prior, an anomalous result mandated by the complexities of the regulatory process.

The Department's Reallocation of Beth Israel's Subsidy for Fiscal Years 2007 and 2008 and Subsequent Appeals

a. 2007

On April 25, 2007, Robert T. Neu, the Department of Health's Director of Hospital Finance and Charity Care, informed the presidents of Hackensack Medical and St. Mary's about the reallocation for fiscal year 2007. Neu explained that the Department of Health had performed the zip code analysis required by N.J.A.C. 10:52-13.7(b) and found that Hackensack Medical served 25.3% of the patients from Beth Israel's primary market area, the most of any hospital statewide. He further explained that the Department of Health nonetheless chose to reallocate all of the remaining funds to St. Mary's, relying on the alternative methodology contained in N.J.A.C. 10:52-13.7(f). Neu's memorandum stated:
The alternate methodology for reallocation cited above was employed in recognition of the vital role St. Mary's has played and is expected to increasingly play in maintaining access to health care services for the population previously serviced by [Beth Israel] Regional. St. Mary's acquisition of and subsequent relocation into the facility previously occupied by [Beth Israel] Regional clearly demonstrates their intent and commitment to continuing the provision of essential charity care services to this local population.
On May 25, 2007, Hackensack Medical appealed the decision to the Department of Health. The Commissioner of the Department of Health adopted the recommendation to make an alternative distribution of 2007 charity care funds to St. Mary's in a final decision on August 3, 2007. This appeal followed.

b. 2008

On August 6, 2007, Neu sent a memorandum to the presidents of Hackensack Medical and St. Mary's regarding the fiscal year 2008 reallocation. He explained that the Department of Health conducted the analysis required by N.J.A.C. 10:52-13.7(b) and determined that "[n]o hospital satisfied the 25% threshold under the standard methodology." Hackensack Medical served 22.7% of the patients from Beth Israel's primary market area, the most of any hospital statewide. The Department of Health, relying again on the alternative methodology set forth in N.J.A.C. 10:52-13.7(f), reallocated Beth Israel's entire 2008 subsidy to St. Mary's.
On September 5, 2007, Hackensack Medical submitted its appeal to the Department of Health. In a final decision dated November 19, 2007, the Commissioner adopted the Department of Health's alternative distribution of Beth Israel's fiscal year 2008 charity care subsidy to St. Mary's, making the further finding that Hackensack Medical was not entitled to a distribution under the standard methodology. This appeal followed, and by orders dated March 31, 2008, the 2008 appeal was consolidated with the 2007 appeal and St. Mary's motion to intervene was granted.

Implementation of N.J.A.C. 10:52-13.7(f)
We are satisfied from our review of the record and the arguments presented that, contrary to Hackensack Medical's contention, the final action of the Department of Health was not arbitrary, capricious or unreasonable, has sufficient support in the record, and does not violate legislative policies expressed or fairly implied *1221 in the statutory scheme that the Department administers. Aqua Beach Condo. Ass'n v. Dep't of Cmty. Affairs, 186 N.J. 5, 15-16, 890 A.2d 922 (2006). We also conclude that the record contains an abundance of information constituting "a reasonable basis for the findings and conclusions" of the Department of Health. In re Tax Credit Application of Pennrose Props., 346 N.J.Super. 479, 487, 788 A.2d 787 (App.Div.2002). In this case, deference to the Department of Health's specialized expertise in the administration of the regulatory system that surrounds the allocation of charity care subsidies is well-justified. In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422, 945 A.2d 692 (2008); In re Certificate of Need Granted to The Harborage, 300 N.J.Super. 363, 379, 693 A.2d 133 (App.Div.1997).
The reallocation decision must be viewed within the context of N.J.S.A. 26:2H-18.55, which grants the Department of Health considerable discretion in allocating charity care subsidies. Subsection (o) authorizes the Commissioner to take action as he or she deems necessary and appropriate to implement the provisions of the relevant regulations. N.J.S.A. 26:2H-18.55(o).
It is undisputed that N.J.A.C. 10:52-13.7 creates two methods by which the Department of Health may reallocate a closed hospital's subsidy. As the preamble language in subsection (f) clarifies:
Notwithstanding any other provision of this rule, if the Commissioner of Health and Senior Services and the Commissioner of Human Services agree that, in the case of closure of a hospital eligible to receive [disproportionate share hospital] funds, maintaining beneficiary access to health care services requires an alternative distribution of a closed hospital's [disproportionate share hospital] funds, they will do so in accordance with this subsection.
[N.J.A.C. 10:52-13.7(f).]
In determining whether an alternative distribution is warranted, consideration may be given to any relevant factors, including timely access to health care services for the affected population and continued operation in the same or adjoining municipality by an eligible acute care hospital serving substantially the same population. N.J.A.C. 10:52-13.7(f).
In the Department of Health's August 3, 2007 and November 19, 2007 decisions, the Commissioner gave significant weight to St. Mary's acquisition of, and relocation to, the facility previously occupied by Beth Israel. The Commissioner stated, "The most important factor here is St. Mary's willingness to continue beneficiary access to health care services by acquiring and relocating to the facility previously occupied by [Beth Israel]." He also noted
the special responsibility delegated by the Legislature to the Department to protect the role of urban hospitals and guard against their closure, and the responsibility for allocating the charity care subsidy to ensure the provision of medical services to inner city residents and others who cannot afford to pay for medical services.
In the November 19, 2007 decision, the Commissioner further stated:
During the [Certificate of Need] approval process for the transfer of the [Beth Israel] facility, St. Mary's asserted that upon licensure at its relocated site, it would have adequate bed capacity to serve both service areas covered by St. Mary's and [Beth Israel], thereby preserving the current level of health care services for the Passaic area.... During the [Certificate of Need] approval process, St. Mary's stated that it would provide care to all patients regardless of their ability to pay, and that it was committed to removing artificial barriers *1222 to care and ensuring that diversified services are available and accessible for all residents.
Simply stated, St. Mary's willingness to serve the affected population, virtually without interruption, was of paramount importance.
Furthermore, a plain reading of N.J.A.C. 10:52-13.7(f) indicates that the Department of Health is not bound by the results of the zip code analysis set forth in N.J.A.C. 10:52-13.7(b). The language, "[n]otwithstanding any other provision of this rule," suggests that the Commissioner is free to disregard those results if necessary to "maintain[ ] beneficiary access to health care services." See N.J.A.C. 10:52-13.7(f). Hackensack Medical's narrow interpretation of N.J.A.C. 10:52-13.7, which suggests that the Department of Health is not free to disregard the results of the zip code analysis, would impermissibly render subsection (f) "inoperative, superfluous, or meaningless." N.J. Carpenters Apprentice Training & Educ. Fund v. Borough of Kenilworth, 147 N.J. 171, 179-80, 685 A.2d 1309 (1996), cert. denied, 520 U.S. 1241, 117 S.Ct. 1845, 137 L.Ed.2d 1048 (1997). Hackensack Medical has failed to demonstrate that the decision violates any expressed or implied legislative policies embodied in the statutes and regulations controlling the charity care subsidy program.
In the Commissioner's final decision of August 3, 2007, as to fiscal year 2007 and his final decision dated November 19, 2007, as to fiscal year 2008, the Commissioner set forth a substantial reason for adopting the alternative distribution to St. Mary's, that St. Mary's had demonstrated its commitment to serving the population previously served by Beth Israel. This constitutes a reasonable basis for the findings and conclusions of the Department of Health. See Pennrose, supra, 346 N.J.Super. at 487, 788 A.2d 787.
It is noteworthy that Hackensack Medical's argument regarding the fiscal year 2008 reallocation directly contradicts the argument that it makes regarding the fiscal year 2007 reallocation. Both N.J.A.C. 10:52-13.7(c), which governs the fiscal year in which the closed hospital ceased operations, and (d), which governs all subsequent fiscal years, specify that a hospital must be "eligible" under subsection (b) to receive a reallocated subsidy where the standard formula is used. Subsection (b) requires a market share, based on the zip code analysis, of twenty-five percent or more of admissions from the market area served by the closed hospital. Hackensack Medical was not eligible to receive any portion of the fiscal year 2008 reallocation under the standard methodology because it did not meet the twenty-five percent threshold. Hackensack Medical argues that the Department of Health improperly disregarded the twenty-five percent requirement as to the fiscal year 2007 reallocation, while simultaneously suggesting that the requirement should be disregarded as to the fiscal year 2008 reallocation, despite the plain language of N.J.A.C. 10:52-13.7(d).
Hackensack Medical also contends that the Department of Health's conclusion, that payment of Beth Israel's charity care subsidy funds to St. Mary's was necessary due to "access problems" in the affected population, was unwarranted. According to Hackensack Medical, such problems do not exist in light of the medical services provided by surrounding hospitals, including Hackensack Medical. Hackensack Medical continues to experience an increase in its charity care, it claims, in part because St. Mary's is a Catholic hospital that does not perform services previously offered by Beth Israel, particularly in the area of obstetrics and gynecology. As a result, Hackensack Medical argues that it is "taking on a far greater share of the *1223 market" than St. Mary's, and that Hackensack Medical's "numbers are increasing at a far greater rate" than St. Mary's.
As the Department of Health points out, N.J.A.C. 10:52-13.7(f) does not require that its Commissioner and the Commissioner of Human Services "statistically evaluate ... whether an access issue exists," it merely requires that the Commissioners agree that the alternative distribution is necessary to maintain beneficiary access to health care. In any event, Hackensack Medical's argument concerning St. Mary's being ineligible because it is a Catholic hospital lacks merit. The Department's fiscal year 2008 final decision provided that once it acquired Beth Israel's facilities, St. Mary's was required to develop a plan in conjunction with other area hospitals to ensure that all female reproductive health services previously provided by Beth Israel would continue to be available. Hence, St. Mary's is obliged to provide all services previously available, even if coordinated with other area hospitals.
Accordingly, we find that the alternative distribution authorized in N.J.A.C. 10:52-13.7(f) was appropriately implemented by the Department of Health. The Commissioner of Human Services, via agreement from DMAHS, has agreed to the distribution to St. Mary's, as required by subsection (f). The bases for the Department of Health's decision were clearly articulated, supported by the record, and reasonable.
Affirmed.
NOTES
[1] The DMAHS is the administrative unit within the Department of Human Services responsible for management of federal and state medicaid and related medical assistance and health care funds. Authority to make the relevant decisions has been delegated to that unit. N.J.S.A. 30:4D-4; see, e.g., N.J.A.C. 8:31B-5.1, 10:49-1.2, 10:52-11.1, and 10:71-2.2.